KICHEFSKY, Respondent, vs. WIATRZYKOWSKI, imp., Ap-
·pellant.

*October 14—November 9, 1926.*

*Automobiles: Minor son driving father's truck: Agency of son
while purchasing clothes for himself: Trial: Erroneous in-
struction relating to concurrence of ten jurors: Prejudicial
error. .*

1. A minor son was employed by his father, receiving his board,
   clothes, and spending money, but no salary. The father
   directed the son to take the father's automobile truck and
   go and purchase a hat for himself, and while doing so the
   son ran the plaintiff down and injured him. *Held,* that. the
   father is liable for the tort of the son in the course of the
   agency. p. 322.
2. An erroneous instruction, in an action for personal injuries,
   requiring at least ten jurors to be satisfied by the evidence
   in order to negatively answer a question as to defendant's
   negligence, is *held* prejudicial error, notwithstanding the jury
   gave an affirmative answer to such question. pp. 322, 323.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OTTO H. BREIDENBACH, Circuit Judge.
*Reversed.*

This is an appeal from a judgment in favor of the plaint-
iff and against both defendants entered on a jury verdict.
The action was begun by the plaintiff for personal injuries
received by reason of being struck by a Ford automobile
truck driven by the defendant Joseph Wiatrzykowski.

For the appellant there were briefs by *Schoetz, Williams
& Gandrey,* attorneys, and *Hoyt, Bender, McIntyre &
Hoyt,* of counsel, all of Milwaukee, and oral argument by
*Eugene L. McIntyre.*

For the respondent the cause was submitted on the brief
of *George A. Affeldt* of Milwaukee.

CROWNHART, J.   The accident·happened at the junction
of Windlake and Sixth avenues in the city of. Milwaukee.

The defendant Joseph Wiatrzykowski, driving a Ford truck northwesterly on Windlake avenue, turned to the north on Sixth avenue. The plaintiff, traveling in a southwesterly direction on the westerly side of Windlake avenue, started across Sixth avenue, and as he reached a point near the easterly street-car track he was struck by the automobile and badly injured. Plaintiff testified that as he stepped down from the curb he took two or three steps and looked to the southwest and saw defendant's automobile coming a block away. He continued across the street, looking to the north, and as he reached the point near the street-car track he again looked to the southwest, when he discovered the defendant's car only two feet away and too late to escape.

The case was submitted to a jury on a special verdict, and the jury found that the defendant Joseph Wiatrzykowski was driving his automobile at an excessive rate of speed just prior to the collision, which was a proximate cause of plaintiff's injury; that the defendant Joseph Wiatrzykowski failed to keep a proper lookout ahead of him just before the collision; that the defendant Joseph Wiatrzykowski did not fail to use ordinary care in the management and operation of his automobile just prior to the collision, and that the plaintiff was not guilty of any want of ordinary care that proximately contributed to his injury. Damages were assessed at $3,500.

The defendants contend that the evidence shows as a matter of law that the defendant Joseph Wiatrzykowski was not acting as the agent of the defendant *John Wiatrzykowski,* and that at least the evidence presented an issue of fact for the jury as to such agency; that the court erred in instructing the jury; and that the evidence shows, as a matter of law, that the plaintiff was guilty of contributory negligence which proximately caused his injuries.

It appears without controversy that Joseph Wiatrzykow-

ski was seventeen years of age, working for his father in his retail meat market and grocery, and that he made deliveries with his father's Ford truck; that he received from his father his board, clothes, and spending money for such services, but no salary. On the evening in question Joseph desired to buy a hat and his father gave him money for that purpose. The father knew that Joseph was going out to purchase the hat and that he was going to take the truck for that purpose, with the father's express permission. The father testified:

"He told me he needed a new hat. I says, 'You can have it.' I then gave him money and I says, 'Go and get it.' I did not tell him where to go and get it. I didn't tell him where he should go to get a hat. I gave him the money and told him to get the hat. He asked whether he could take the automobile. The automobile referred to was the Ford truck. The Ford truck at the time he asked me whether he could use it to go and get the hat was out in front of the store on the street. When Joe asked to take the Ford truck and get a hat I says, ' You can go.' I saw Joe go out and get it; I saw him take the key which was hanging in the store."

This court has recently held that the father is liable for injuries caused by members of the family when driving the father's automobile, only upon the principle of agency, and the question here under consideration is whether or not, upon the statement of facts, the boy Joseph was the agent of the father in going to purchase the hat. The facts being undisputed, it became a question of law. It being the duty of the father, under the circumstances, to provide Joseph with clothing, and the father having directed the son to perform that duty and take the car for the purpose, Joseph became the agent of his father in making the purchase. Joseph was simply doing for the father what it was the duty of the father to do for himself. The father might have personally

purchased the hat, or he might have selected an agent to do that for him.  This he did.  He chose Joseph as his agent to purchase the hat.  Joseph, in the performance of his agency, with the knowledge and consent of the father, took the Ford truck to go to the place of purchase, and while on the trip ran the plaintiff down and injured him, and the father is liable for the tort of the son in the course of the agency.

On the first question, as to Joseph's speed just prior to the collision, the court instructed the jury:

"You are further instructed in this connection that at least ten members of the jury must agree before a question can be answered and the same ten must agree to the answer of each and every question.  Therefore if ten or more of you are satisfied by a preponderance of the evidence to a reasonable certainty that that question should be answered 'Yes,' you will so answer it.  If ten or more of you are satisfied by a preponderance of the evidence that it should be answered 'No,' you will answer it 'No.'"

On the second question, as to the failure to keep a proper lookout, the court gave the same instruction as on the first question.

This instruction was erroneous.  The reason for this is pointed out in *Papke v. Haerle,* 189 Wis. 156, 162, 207 N. W. 261, 264, where Mr. Justice OWEN, writing the opinion, said:

"It will be noticed that this placed upon the defendant the same burden to secure a negative answer that it placed upon the plaintiff to secure an affirmative answer.  This certainly was incorrect.  It was not necessary that ten or more members of the jury should be satisfied to a reasonable certainty by a preponderance of the evidence that the question should be answered 'No' in order to authorize such an answer.  The question should be answered 'Yes' only when ten or more members of the jury were satisfied to a reasonable certainty by a preponderance of the evidence that it should be answered 'Yes.'  If ten or more were not so satisfied, then it

was their duty either to answer it 'No' or to disagree. The charge was plainly erroneous in requiring a quantum of evidence necessary to meet the burden of proof in order to justify a negative answer to the various questions."

The instruction being clearly erroneous, it remains to be seen whether or not such error was prejudicial to the defendants. The jury found in favor of the plaintiff under the instruction applicable thereto, which was correct. The question remains whether or not the jury would probably have acted differently or reached another conclusion if they had been properly instructed upon the negative of the question. This we cannot say. The jury may well have been confused and misled by the instruction.

*By the Court.*—The judgment of the circuit court is reversed.